1  Melissa G. Fulgencio (SBN 277663)
   **UPLIFT LAW, PC**
2  E-mail: mel@upliftlaw.net
   650 N. Rose Drive, Ste. 620
3  Placentia, CA 92870
4  Telephone: (714) 248-5612
   Facsimile: (714) 582-3990
5
   Attorneys for Plaintiff,
6  MORSE COMMUNICATIONS, INC.
7

8              UNITED STATES DISTRICT COURT

9                   NORTHERN DISTRICT

10

| | |
|---|---|
| 11  MORSE COMMUNICATIONS, INC., a Florida corporation, | Case No.: |
| 12 | **COMPLAINT FOR DAMAGES** |
| 13                 Plaintiff, | 1. Breach of Written Contract |
| 14       v. | 2. Fraud - Intentional Misrepresentation |
| 15  ORACLE AMERICA, INC., a Delaware corporation; NETSUITE INC., a Delaware corporation; ORACLE CORPORATION, a Delaware corporation; and DOES 1 through 40, inclusive, | 3. Unfair Business Practices [Bus. & Prof. Code § 17200, *et seq*. |
| 16 | |
| 17 | |
| 18                 Defendants. | |
| 19 | |

20

21

22
              **[REMAINDER OF PAGE INTENTIONALL LEFT BLANK]**
23

24

25

26

27

28

---
COMPLAINT FOR DAMAGES

Plaintiff Morse Communications, Inc., ("Plaintiff" or "Morse"), by and through their attorneys of record Uplift Law, PC, brings this action against Defendants Oracle America, Inc.; NetSuite Inc.; Oracle Corporation; and Does 1 through 40 (collectively, "Defendants") (Plaintiff and Defendants shall be referred to as the "Parties") for: general and compensatory damages; exemplary and punitive damages; pre-and post-judgment interest; injunctive relief; and costs and attorneys' fees resulting from Defendants' unlawful conduct, and as grounds therefore alleges as follows:

## JURISDICTION AND VENUE

1. This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332 based on diversity of citizenship between the parties. Plaintiff Morse Communications is incorporated and headquartered in Florida. Defendant Oracle Corporation is incorporated in Delaware and headquartered in California. The amount in controversy alleged herein exceeds $75,000.

2. The U.S. District Court for the Northern District of California is the proper venue because the various actions as set forth herein occurred, in part, in this judicial district; and Defendants are domiciled here. The contracts between Plaintiff and Defendants were, in part, entered into and performed in San Mateo County, California.

3. There is an actual and present controversy between and among the Plaintiff and Defendants.

## PARTIES

4. Plaintiff Morse Communication, Inc., at all times relevant herein, was and is a resident of the County of Brevard in the State of Florida.

5. Plaintiff is informed and believes, and based thereon allege, that at all relevant times herein, Defendant Oracle Corporation was and is a Delaware corporation qualified to do business in the State of California. Plaintiff is further informed and believes, and based thereon alleges, that Defendant Oracle Corporation's World Headquarters is located in San Mateo County, California at 500 Oracle Parkway, Redwood Shores, California 94065 and that Defendant Oracle Corporation conducted business as set forth herein in San Mateo County, California.

6. Plaintiff is informed and believes, and based thereon allege, that at all relevant times herein, Defendant NetSuite, Inc., was and is a Delaware corporation qualified to do business in the State of California. Plaintiff is further informed and believes, and based thereon alleges, that Defendant NetSuite, Inc.'s, Corporate Headquarters is located in San Mateo County, California at 500 Oracle Parkway, Redwood Shores, California 94065 and that Defendant NetSuite Inc., conducted business as set forth herein in San Mateo County, California.

7. Plaintiff is informed and believes, and based thereon allege, that at all relevant times herein, Defendant Oracle America Inc., was and is a Delaware corporation qualified to do business in the State of California. Plaintiff is further informed and believes, and based thereon alleges, that Defendant Oracle America Inc.'s, Corporate Headquarters is located in San Mateo County, California at 500 Oracle Parkway, Redwood Shores, California 94065 and that Defendant Oracle America Inc., conducted business as set forth herein in San Mateo County, California.

8. Plaintiff is ignorant of the true names and capacities of Defendants sued as DOES 1 through 40, inclusive, and therefore sues these Defendants by such fictitious names. Plaintiff will amend this Complaint to allege their true names and capacities when ascertained. Plaintiff is informed and believes and thereon alleges that each of these fictitiously named Defendants are responsible in some manner for the occurrences herein alleged, and that Plaintiff's injuries as herein alleged were proximately caused by the aforementioned Defendants.

9. At all times herein mentioned, Defendants, and each of them, ratified the acts of each of the other Defendants.

10. Plaintiff is informed and believes and on that basis alleges that, at all relevant times, each of the Defendants, whether named or fictitious, was the agent, employee, alter ego, and/or co-conspirator of each of the other Defendants, and in doing the things alleged to have been done in the Complaint, acted within the scope of such agency or employment, or ratified the acts of the other.

**GENERAL ALLEGATIONS**

11. On or about November 29, 2018, Plaintiff and Defendants, by and through their

respective agents, entered into the Subscription Service Agreement and the Agreement for the Fixed Price Statement of Work (collectively the "Agreement").

12. Defendants market their products as a Software as a Service (SaaS), which was specifically what Plaintiff was looking for.

13. Before entering into the Agreement, Plaintiff underwent significant research and due diligence efforts in vetting the best product for their needs.

14. Prior to entering into the Agreement, Plaintiff explicitly told Defendants that it was important that they not be required to pay platform subscription fees until their "go live" date. In response, during negotiations and Defendants' sales pitch, Defendants assured Plaintiff that Plaintiff would not be required to pay platform fees until their "go live" date.

15. During Defendants' sales pitch, Plaintiff explicitly expressed that one of their requirements from Defendants' product was the capability to do internal payroll rather than being forced to use a third party. Defendants promised that their product would have this capability for Plaintiff.

16. At all relevant times, Defendants, by and through their various representatives, stated that their product would meet Plaintiff's needs and said product would "go live" on or around March 2019.

17. Unfortunately, as set forth in the Parties' communications, this was not the case as Defendants regularly and repeatedly failed to deliver a product that satisfied Plaintiff's needs.

18. Defendants knew at the time of their various statements that Defendants' product would, in fact, not actually satisfy Plaintiff's needs per the Parties' Agreement.

19. Based on Defendants' alleged knowledge of its own software and its ability to implement the software for Plaintiffs' needs, Plaintiff, who had no working knowledge of the software's capabilities, relied on Defendants' representations by entering into the Agreement.

20. In or around February 2019, Plaintiff informed Defendants of a missing cost module, which ultimately resulted in months of delays. Plaintiffs further informed Defendants that they had failed to deliver the subscription module as of on or about December 17, 2019.

21. More than one year after the Parties entered into the Agreement and approximately nine months after the agreed upon "go live" date, Defendants still failed to deliver a critical module.

22. Despite Plaintiff's consistent communication with Defendants regarding the missing modules, Defendants demonstrated that they were incapable of providing the modules as contracted and had little to no understanding of their own products.

23. Throughout Plaintiff's interactions with Defendants, it became abundantly clear that Defendants' representatives do not in fact have a good understanding of their own products and therefore had no reasonable belief that Defendant would be able to perform in accordance with the Parties' Agreement.

24. Plaintiff regularly requested updates, attended trainings, and made best efforts to work with Defendants in order to satisfy their needs and the Agreement. Plaintiff's requests and efforts were consistently met with vague responses, unnecessary repeated trainings, missed deadlines, ignored concerns, missing products, and custom development charges due to missing functionality and modules.

25. Defendants consistently billed Plaintiff against budget for allegedly providing an exorbitant amount of working hours to Plaintiff's project without any evidence that any work was actually completed and without providing any justification.

26. Without prior notification to Plaintiff, Defendants immediately sold Plaintiff's account, demonstrating that Defendants no longer had a personal stake in the outcome.

27. Throughout Plaintiff's discussions with Defendants, Defendants' team frequently indicated that they were unfamiliar with Plaintiff's project and their own products. Defendants' team rarely answered Plaintiff's direct questions about Defendants' products or next steps, rather they repeatedly stated they "would circle back" or "take note of that issue".

28. Plaintiff specifically hired employees for this process, hired an outside consultant, canceled long-standing company events, and dedicated nearly their entire team to this project, only to have Defendants express that Plaintiffs were "expecting too much" out of the Agreement

that was already in place.

29. As late as February 2020, nearly a year after Defendants failed to meet Plaintiff's initial "go live" date, Plaintiff's Project Manager unexpectedly left Defendants' employment and all other consultants on Plaintiff's account were moved to other jobs, thus making it clear that their Agreement with Plaintiff was taking a backseat to every other "go live" event that was scheduled for February 2020.

### FIRST CAUSE OF ACTION

### Breach of Written Contract

### Against All Defendants

30. Plaintiff incorporates by reference the allegations in the preceding paragraphs of this Complaint as though fully set forth herein.

31. On or about November 27, 2018, Defendants provided a price estimate to Plaintiff for all services to be contracted for. The estimate totaled $300,350 to be paid by Plaintiff to Defendants for services rendered.

32. On or about November 29, 2018, Plaintiff and Defendants entered into the Agreement. True and correct copies of the Agreement and estimate are attached hereto and incorporated herein as **Exhibit 1**.

33. Between February 2019 and June 2020, Plaintiff paid over $100,000 to Defendants through Bank of America under the Agreement despite Defendants failure to perform or provide required services and products. A true and correct copy of Plaintiff's Bank of America Leasing payment schedule is attached hereto and incorporated as **Exhibit 2**.

34. Plaintiff by and through its representatives, either fully performed or was excused from performing all of the terms and conditions which it was required to perform under the Agreement.

35. Defendants breached the Agreement by failing to provide the contracted for services and products, including critical job and subscription modules that were never provided.

36. As the direct and proximate result of Defendants' breach of the Agreement,

Plaintiff has suffered substantial damages, in an amount not less than $100,000 and believed to be at least $300,000, the total of which will be proven at trial.

## SECOND CAUSE OF ACTION

### Fraud - Intentional Misrepresentation

### Against All Defendants

37. Plaintiff incorporates by reference the allegations in the preceding paragraphs of this Complaint as though fully set forth herein.

38. Defendants, by and through their various representatives, intentionally and recklessly made false misrepresentations to Plaintiff's representatives on multiple occasions.

39. Defendants' representations as alleged herein were false.

40. Defendants knew at the time of their sales pitch to Plaintiff that they were unable to meet Plaintiff's needs. Therefore, Defendants had no intention of waiting until the "go live" date to charge Plaintiff for platform fees. However, Plaintiff reasonably relied upon Defendants' agreement to wait for payment until the "go live" date when deciding to sign the Agreement. In fact, Defendants frequently billed Plaintiff platform and other fees and costs against budget with little to no explanation.

41. Defendants also knew at the time of their sales pitch, despite their promise to the contrary, that their product did not include payroll capabilities. Plaintiff would therefore be required to engage a third-party payroll program at an additional cost. Unfortunately, Plaintiff relied on Defendants' assurances that their software included payroll capabilities when deciding to sign the Agreement.

42. Defendants held themselves out as experts in their own software by providing training on their personalized software. Furthermore, Defendants expressly stated that their software would meet all of Plaintiff's requirements. Therefore, Plaintiff had no reason to know that Defendants' software would not, and could not, meet all of Plaintiff's needs based upon Defendants' assurances about their own product.

43. Defendants had no reasonable grounds to believe that they could perform their

duties under the Agreement or provide products or services that satisfied Plaintiff's needs. Defendants created their software; therefore, they would have nearly exclusive knowledge on its capabilities and shortfalls. Thus, prior to engaging with Plaintiff, Defendants would have known that their software did not include payroll capabilities, despite their assurances to the contrary. Additionally, Defendants would have known that they were unable to provide modules and updates that were critical to meeting Plaintiff's long-term needs.

44. Therefore, Defendants were aware from the time when the Parties entered into the Agreement that Defendants did not intend to comply with the terms of the Agreement and were unable to provide products or services to meet Plaintiff's needs.

45. To date, Defendants have not produced any documentation indicating they were able to perform their duties under the Agreement. Thus, even if Defendants did believe their products could satisfy Plaintiff's needs, such representation was intentional and reckless because Defendants have no documentation, evidence, or the like causing them to reasonably believe so. Defendants will be unable to prove that their software included payroll capabilities or vital updates critical to meeting Plaintiff's requirements because such evidence does not exist.

46. Plaintiff regularly requested email and telephonic updates on their "go live" date and missing modules, attended additional trainings, created meetings with Defendants' ever-changing team, and made best efforts to work with Defendants in order to ensure that Defendants' software could be used as promised. Plaintiff's requests and efforts were consistently met with vague responses, unnecessary training, missed deadlines and missing products.

47. Defendants also assured Plaintiff that despite the missing modules, which Plaintiffs contracted for, but that Defendant failed to provide, the system would still work. However, Plaintiffs discovered that the temporary fixes (band-aids) that Defendants were attempting to use work around the missing modules would not allow the system to be updated. Without regular system updates, Plaintiff would be required to pay for bi-annual manual updates by Defendants. Plaintiffs never agreed to the additional costs. Defendants forced these bi-annual updates intentionally to cause Plaintiff to continue to pay them exorbitant fees.

48. Defendants, by and through their actions, intended to defraud Plaintiff and/or induce Plaintiff's reliance upon their statements.

49. The facts that were the subject of misrepresentations and concealment were material to Plaintiff because the products and services to be rendered were and are critical to the business operations of Plaintiff.

50. Plaintiff is informed and believes and thereon alleges that when Defendants made the representations to Plaintiff, Defendants knew that the facts were not true, and knew that the facts concealed and/or misrepresented were material to the relationship between the Parties.

51. Plaintiff is further informed and believes and thereon alleges that when Defendants made the misrepresentations and concealed the material facts alleged above, Defendants had no intention of performing in accordance with the Agreement.

52. In reasonable reliance upon the material misrepresentations and omissions, as alleged above, Plaintiff was induced by fraud to enter into the Agreements and make payments for services and products that were never received.

53. In agreeing to enter into Agreement with Defendants, Plaintiff reasonably and justifiably relied upon the fact that Defendants had the products, knowledge and experience to satisfy its obligation to Plaintiff.

54. Plaintiff justifiably relied upon Defendants' representations because Defendants made repeated representations and reassurances to Plaintiff that they would abide by the promises and representations made to Plaintiff regarding the terms of the Agreement.

55. As a direct and proximate result of Defendants' intentional acts, omissions, and/or misrepresentations, Plaintiff has been injured in an amount to be proven at trial.

56. In performing the acts herein alleged, Defendants, and each of them, acted with oppression, fraud and malice, or alternatively, they acted in such conscious disregard of Plaintiff's rights, that as a direct, proximate and legal result of that misconduct, Plaintiff is entitled to punitive damages sufficient to punish and make an example of Defendants, and each of them, and to deter such conduct in the future, in an amount to be determined at trial.

# THIRD CAUSE OF ACTION

## Unfair Business Practices [Violation of Bus. & Prof. Code § 17200, *et seq.*]

## Against All Defendants

57. Plaintiff incorporates by reference the allegations in the preceding paragraphs of this Complaint as though fully set forth herein.

58. Business and Professions Code Section 17200 states, in pertinent part: "…unfair competition shall mean and include any unlawful, unfair or fraudulent business act or practice […]."

59. The definition of "Unfair Conduct" as contemplated above, at all times mentioned herein, means that Defendants engaged in "unfair" business practices because their conduct, as discussed above, and incorporated herein by reference, was immoral, unethical, oppressive, unscrupulous, and substantially damaging to Morse Communications Inc.

60. Plaintiff has suffered injury in fact and has lost money or property as a result of Defendants' unfair business practices, and Defendants have reaped unfair benefits and illegal profits at Plaintiff's expense.

61. Plaintiff is entitled to immediate possession of all amounts owed to it by Defendants, with interest.

62. Defendants' unfair business practices entitle Plaintiff to seek preliminary and permanent injunctive relief, including but not limited to orders that Defendants account for and restore to Plaintiff all payments Plaintiff made to Defendants for services and products not received.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Morse Communications Inc., prays for judgment against Defendants Oracle Corporation, NetSuite Inc., Oracle America Inc., and DOES 1 through 40 as follows:

1. For compensatory damages, in an amount subject to proof at trial and in excess of the minimum jurisdiction of this Court;

2. For exemplary and punitive damages, in an amount subject to proof at trial and in excess of the minimum jurisdiction of this Court;

3. For pre- and post-judgment interest;

4. For reasonable attorneys' fees and costs of suit herein incurred;

5. For injunctive relief as provided by Business and Professions Code Section 17200, *et seq.*;

6. For any other and further relief that the court considers proper.

## REQUEST FOR JURY TRIAL

Plaintiff hereby demands a jury in the trial of this matter.

**UPLIFT LAW, PC**

Dated: July 13, 2021   By: _____
Melissa G. Fulgencio, Esq.
Attorneys for Plaintiff,
Morse Communications, Inc.